SECTION 12
SECTION 12

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO. 19-11819

**DIVISION** _____   **SECTION:** _____

**D**

**GAYLE J. LEBEAU**

**V.**

FILED
2019 NOV 13 PM 3:47
DISTRICT COURT

**HUNTINGTON INGALLS, INC., TAYLOR-SEIDENBACH, INC., EAGLE, INC., MCCARTY CORPORATION, CERTAIN UNDERWRITERS AT LLOYD'S LONDON, HOPEMAN BROTHERS, INC., LIBERY MUTUAL INSURANCE CO., INTERNATIONAL PAPER CO., BERKSHIRE HATHAWAY SPECIALITY INSURANCE COMPANY, LAMORAK INSURANCE COMPANY, CBS CORPORATION, ALBERT BOSSIER, THE TRAVELERS INSURANCE COMPANY**

**FILED:** _____

CHELSEY RICHARD NAPOLEON
CLERK, CIVIL DISTRICT COURT

**DEPUTY CLERK**

402 POYDRAS BUILDING
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112

**ORIGINAL PETITION FOR DAMAGES**

**NOW INTO COURT**, by and through undersigned counsel, comes Petitioner, **GAYLE LEBEAU**, a person of the full age of majority who for a cause of action respectfully represents the following:

Receipt Date      11/13/2019 12:34:00 PM
Cashier           dciaccio
Case Number       2019 - 11819
Grand Total       $ 1643.50
Amount Received   $ 1632.00
Balance Due       $ 11.50
Over Payment      $ 0.00

1.

Check #  27078  $1632.00

Petitioner, **Gayle Leabeau** is a person of the full age of majority and a domiciliary of St. Tammany Parish, LA.

2.

| Item | Charged | Paid | Bal |
|---|---|---|---|
| Petition for Damages | $444.50 | $444.50 | $0.00 |
| Judicial College | | | $0.00 |
| Building Fund Fee | $25.00 | $25.00 | $0.00 |
| Indigent Legal Fee | $10.00 | $10.00 | $0.00 |
| JSC | $25.50 | $25.50 | $0.00 |
| Supreme Court- Proc essing Fee | $10.00 | $10.00 | $0.00 |
| Additional Defendant | $1128.00 | $1116.50 | $11.50 |

The Court has jurisdiction over this matter because the alleged tortious conduct occurred within this State.

3.

Venue is proper in Orleans Parish because several Defendants have their principal place of business in Orleans Parish.

4.

Made Defendant, **HUNTINGTON INGALLS, INCORPORATED,** (formerly Northrop Grumman Ship Systems, Inc. and Avondale Industries, Inc.) (sometimes hereinafter referred to as **"Premises Defendant"**), a Delaware Corporation licensed to do and doing business in the State of Louisiana.

5.

VERIFIED
11-13-19

EXHIBIT A

CHELSEY RICHARD NAPOLEON
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112
504 - 407 - 0000

| | |
|---|---|
| Receipt Date | 11/12/2019 2:00:00 PM |
| Receipt Number | 789886 |
| Cashier | dciaccio |
| Register | CDC Cash Register 1 |

| | |
|---|---|
| Case Number | 2019 - 11819 |

| | |
|---|---|
| Grand Total | $ 11.50 |
| Amount Received | $ 11.50 |
| Balance Due | $ 0.00 |
| Change Due | $ 0.00 |

Payment / Transaction List
Cash  $11.50

| Item | Charged | Paid | Bal |
|---|---|---|---|
| Additional Defendant s | $1128.00 | $11.50 | $0.00 |

Made Defendant, **HOPEMAN BROTHERS INC.,** (hereinafter **"Asbestos Supplier Defendant"** and **"Asbestos Premises Contractor Defendant"**), a foreign corporation licensed to do business and/or doing business in the State of Louisiana.

6.

Made Defendant, **LIBERTY MUTUAL INSURANCE CO.,** (as insurer of Wayne Manufacturing), (hereinafter **"Liberty"** or **"Asbestos Insurance Defendant"**), a company licensed to do business in the State of Louisiana, was at all pertinent times an insurance provider for Hopeman Brothers Inc. and Wayne Manufacturing (Wayne hereinafter referred to as **"Asbestos Manufacturer Defendant"**).

7.

Made Defendant, **INTERNATIONAL PAPER CO.,** f/k/a/ Champion International, f/k/a U. S. Plywood, Inc. (hereinafter **"Asbestos Manufacturer Defendant"**), is a foreign corporation authorized to do and doing business in Louisiana.

8.

Made Defendant, **THE TRAVELERS INSURANCE COMPANY,** (hereinafter "Travelers" or **"Asbestos Insurance Defendant"**), a company licensed to do and doing business in the State of Louisiana, which at all pertinent times was an insurance provider for Avondale and the following Avondale executive officers, C. Edwin Hartzman, Henry "Zac" Carter. Albert Bossier, Jr., James O'Donnell, Steve Kennedy, John Chantry, Pete Territo, George Kelmell, J. Melton Garrett (DECEASED), Burnette "Frenchy" Bordelon, and Hettie Margaret Dawes-Eaves (DECEASED), and is liable to Petitioner pursuant to the Louisiana Direct Action Statute.

9.

Made Defendant, **TAYLOR-SEIDENBACH, INC.,** (hereinafter **"Asbestos Supplier Defendant"**), a New Orleans, Louisiana-based corporation licensed to do and doing business in the State of Louisiana.

10.

2

Made Defendant, **EAGLE, INC.,** f/k/a Eagle Asbestos & Packing Co., Inc., (hereinafter "**Asbestos Supplier Defendant**"), a New Orleans, Louisiana-based corporation licensed to do and doing business in the State of Louisiana.

11.

Made Defendant, **MCCARTY CORPORATION,** f/k/a McCarty-Branton, Inc., (hereinafter "**Asbestos Supplier Defendant**") a Louisiana-based corporation licensed to do and doing business in the State of Louisiana.

12.

Made Defendant, **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,** (hereinafter "**Lloyd's**" or "**Asbestos Insurance Defendant**"), a company licensed to do and doing business in the State of Louisiana, which at all pertinent times was an insurance provider for Avondale and the following Avondale executive officers, C. Edwin Hartzman, Henry "Zac" Carter. Albert Bossier, Jr., James O'Donnell, Steve Kennedy, John Chantry, Pete Territo, George Kelmell, J. Melton Garrett (DECEASED), Burnette "Frenchy" Bordelon, and Hettie Margaret Dawes-Eaves (DECEASED) and is liable to Petitioner pursuant to the Louisiana Direct Action Statute.

13.

Made Defendant, **BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY, formerly STONEWALL INSURANCE COMPANY** (hereinafter "**Berkshire**" or "**Asbestos Insurance Defendant**"), a company licensed to do business in the State of Louisiana, was at all pertinent times an insurance provider for Defendant, **Eagle, Inc.**

14.

Made Defendant, **LAMORAK INSURANCE COMPANY** (hereinafter "**Lamorak**" or "**Asbestos Insurance Defendant**"), a company licensed to do and doing business in the State of Louisiana, was at all pertinent times an insurance provider for Avondale and the following Avondale executive officers, C. Edwin Hartzman, Henry "Zac" Carter. Albert Bossier, Jr., James O'Donnell, Steve Kennedy, John Chantry, Pete Territo, George Kelmell, J. Melton Garrett (DECEASED), Burnette "Frenchy" Bordelon, and Hettie Margaret Dawes-Eaves (DECEASED), and is liable to Petitioner pursuant to the Louisiana Direct Action Statute.

3

15.

Made Defendant, **CBS CORPORATION, successor-in-interest to Viacom Inc.,** **successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation,** (hereinafter "**Asbestos Manufacturer Defendant**"), a foreign corporation licensed to do and doing business in the State of Louisiana.

16.

Made Defendant, **ALBERT BOSSIER**, as an Executive Officer of Avondale Industries, Inc., n/k/a Huntington Ingalls Incorporated, an Asbestos Employer Defendant and Asbestos Premises Defendant.

17.

Many of the aforesaid Defendants listed are nonresident corporations in Louisiana. However, at all times material, these Defendants were doing business in Louisiana, made contracts with residents of the State of Louisiana, and committed torts in the State of Louisiana against residents of the State of Louisiana from which acts this suit arises. Such acts subject these defendants to service of process pursuant to the Louisiana long-arm statute.

## FACTS

18.

Petitioner was diagnosed with mesothelioma in August 2019.

19.

Petitioner was born on July 23, 1952 to Louis Roy Lebeau, Sr., and Leafy Eva Cantrelle Lebeau. Petitioners' father, Louis Roy Lebeau, Sr., worked for Avondale at its Main Yard as a tacker in 1971 and a welder from 1965-1971. Petitioner's brother, Elwin Lebeau , worked for Avondale at its Main Yard as a Sheet Metal Helper welder from November 1965 to 1971. At all pertinent times while his father and brother worked for Avondale, Petitioner shared a home with them.

20.

Throughout the ordinary course and scope of their employment at Avondale Shipyard, Petitioner's father and brother were exposed to substantial quantities of asbestos fibers and

4

asbestos dust and debris while working on ship construction. In the course of performing their duties, Petitioner's father and brother were also exposed to asbestos fibers from asbestos-containing insulation products, including cements, block insulation and pipe coverings, while they were working around other craftsmen, including but not limited to insulators, pipefitters, welders and joiners, as the other craftsmen were performing their own job duties. Even when not handling the dangerous materials themselves, Petitioner's father and brother were nevertheless exposed to dangerous raw asbestos and asbestos products and especially the dust and fibers that were caused by the other workers in the areas where Petitioner's father and brother were working. Through their work at Avondale, Petitioner's father and brother would come home with asbestos dusts on their clothes and person, exposing Petitioner to asbestos. Petitioners' exposure to the asbestos carried home by his father and brother from their work at Avondale caused his mesothelioma.

## LIABILITY OF PREMISES DEFENDANT

### 21.

The Premises Defendant was aware or should have been aware of the dangerous condition presented by exposure to asbestos and other toxic substances, and that its employees, such as Petitioner's father and brother would have an opportunity to leave work with asbestos fiber and dust on their clothes and persons as a result of their work with these materials at their facility in such a way as to become respirable in substantial quantities at their employees' homes, causing their family members, such as Petitioner, exposure to asbestos, and yet it negligently failed to take protect Petitioner from his household exposure to asbestos.

### 22.

The Premises Defendant negligently failed to inform its employees and/or willfully withheld from its employees the knowledge of the dangers to the health of persons exposed to asbestos dust.

### 23.

The Premises Defendant had a responsibility to its employees to provide proper safety equipment, housekeeping, hygiene and other precautions to insure that its employees would not expose persons with whom they came in contact to asbestos and cause the public, including

Petitioner, to develop asbestos-related cancer. However, it negligently to carry out these duties and failed to protect the public, including Petitioner, from the dangers of asbestos dust exposure on the clothing or person of its employees.

24.

In addition to the foregoing acts of negligence, the Premises Defendant was and is guilty of the following additional acts of negligence:

a)    Failing to provide necessary changing areas, showers and special clothing to its employees so that its employees cleaned off and removed all asbestos dust and fibers from their person and clothing prior to returning home;

b)    Failing to survey, study, inspect, test, abate and remediate asbestos in the facility in which its employees worked;

c)    Failing to exercise reasonable care to ensure employees and their persons and clothing would not become contaminated with asbestos dust;

d)    Failing to maintain a proper worksite;

e)    Failing to provide clean air and proper ventilation;

f)    Failing to control the emission of hazardous levels of toxic materials including asbestos-containing dust into the ambient atmosphere and contaminating the areas wherein its employees, including Petitioner's father and brother, worked;

g)    Failing to exercise ordinary care to warn employees, of the danger and harm to which exposure to asbestos could cause to their persons and their households;

h)    Failing to ensure that asbestos material to which its employees were exposed did not expose and injure innocent offsite bystanders.

i)    Failing to reveal and knowingly concealing the inherent dangers in using asbestos, and other harmful substances in their production processes;

j)    Failing to comply with applicable State and Federal regulations regulating workplace exposure to asbestos (including, but not limited to, those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh-Healey Public Contracts Act and the Occupational Safety and Health Act);

k).   Through other acts of negligence which may be revealed during discovery.

25.

Petitioner's exposure to asbestos due to the actions and inactions of the Premises Defendant set forth above was a reasonably anticipated and foreseeable event and was a substantial contributing cause of the injuries complained of herein.

**LIABILITY OF ASBESTOS MANUFACTURER DEFENDANTS**

26.

The **Asbestos Manufacturer Defendants** and/or their predecessors-in-interest ("**Asbestos Manufacturer Defendants**"), during all the times mentioned herein and for a long time prior thereto, were engaged in the business of manufacturing, selling, marketing, distributing, and

otherwise placing into the stream of commerce asbestos-containing products and/or products calling for the application and installation of asbestos thereon.

27.

Said products were expected to and did, in fact, reach the ultimate users, consumers, and third persons in substantially the same condition in which they were sold.

28.

The products of the **Asbestos Manufacturer Defendants** were defective and unreasonably dangerous in their design and marketing, which were substantial contributing causes of the injuries and damages claimed herein.

## BREACH OF IMPLIED AND EXPRESSED WARRANTIES

29.

Petitioner alleges and asserts the following allegations:

Petitioner alleges that the **Asbestos Manufacturer Defendants,** and each of them, negligently breached their warranties to him in the following respects:

a) That the **Asbestos Manufacturer Defendants** knew or in the exercise of reasonable care ought to have known that their products were defective, and that such products were not suitable for the purposes for which they were intended;

b) That the **Asbestos Manufacturer Defendants** should have tested their products, especially those containing asbestos, to ascertain the safe or dangerous nature of such products before offering them for sale, or in the alternative, should have removed such products from the market upon ascertaining that such products would cause asbestos-related diseases;

c) That the **Asbestos Manufacturer Defendants** should have devised a method of application for their products, especially those containing asbestos, that would have kept those using and/or working around such products from contracting asbestos-related diseases if the **Asbestos Manufacturer Defendants** would not remove such products from sale to the public; and

d) That the products of the **Asbestos Manufacturer Defendants** were warranted, either expressly or impliedly, to be merchantable, when in truth they were not, and therefore, the **Asbestos Manufacturer Defendants** breached, the warranty of merchantability.

30.

7

The **Asbestos Manufacturer Defendants'** breach of implied and expressed warranties resulted directly in and/or caused and contributed to Petitioner's injuries and the damages to Petitioner as set forth herein.

31.

Petitioner alleges that the **Asbestos Manufacturer Defendants** are strictly liable and/or negligent in their failure to warn in the following respects:

1.   **Negligent Failure to Warn**

That the **Asbestos Manufacturer Defendants** knew or in the exercise of ordinary or reasonable care ought to have known that the asbestos products they manufactured, sold, packaged, supplied, marketed, delivered and distributed were deleterious, poisonous, and highly harmful to Petitioner's body, lungs, respiratory system, and health, notwithstanding which, the **Asbestos Manufacturer Defendants** negligently failed to take any reasonable precautions or exercise reasonable care to warn others and those who would come into contact with users, including Petitioner causing Petitioner's injuries, of the danger and harm to which he was exposed; and

That the **Asbestos Manufacturer Defendants** knew or in the exercise of ordinary care ought to have known that their asbestos was deleterious, poisonous, and highly harmful to the Petitioner's body, lungs, respiratory system, and health, notwithstanding which, the **Asbestos Manufacturer Defendants** failed and omitted to provide users and those who would ultimately come into to contact with users, including Petitioner, with the knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if in truth there were any, to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful compound substances and other material contained in said **Asbestos Manufacturer Defendants'** products, causing him injuries.

2.   **Strict Products Liability, Unreasonably Dangerous Due to Defective Design**

That the **Asbestos Manufacturer Defendants** packaged asbestos products in such a manner that in the ordinary handling of the packaging, persons such as petitioner who would ultimately come into to contact with users, came in contact with deleterious, poisonous and highly harmful asbestos dust and fiber causing him injuries; and;

That the **Asbestos Manufacturer Defendants** failed to design their packaging and products in such a manner so as to advise and warn foreseeable users, including those who came in contact with users, such as Petitioner, by placing warnings on its containers of said product and/or otherwise in a way, to advise the handlers, other users and bystanders of the dangers of exposure with said products, causing him injuries.

3.   **Unreasonably Dangerous Per Se**

That the **Asbestos Manufacturer Defendants'** products were unreasonably dangerous per se.

8

32.

Petitioner's exposure to the **Asbestos Manufacturer Defendants'** unreasonably dangerous products was a reasonably anticipated and foreseeable event and was a substantial contributing cause of the injuries complained of herein.

## LIABILITY OF ASBESTOS SUPPLIER DEFENDANTS

33.

**Asbestos Supplier Defendants**, each and individually, sold, distributed, and supplied asbestos and asbestos-containing products, the dust from which Petitioner inhaled, causing his injuries.

34.

**Asbestos Supplier Defendants** are liable to Petitioner as professional vendors of asbestos and asbestos-containing products, and as such, because of the defendants' size, volume of business and merchandising practices, knew or should have known of the defects of the asbestos and asbestos-containing products they sold, and negligently failed to warn the users and those with whom users come into contact of potential health hazards from the use of said products. This failure to warn was a substantial contributing cause of Petitioner's mesothelioma.

35.

**Asbestos Supplier Defendants**, each and individually, are liable to Petitioner because they knew or should have known that the asbestos and asbestos-containing products which they sold and supplied were unreasonably dangerous in their normal use, and their failure to communicate said information to their users and those with whom they come into contact rendered them negligent, with respect to Petitioner, and such negligence was a substantial contributing cause of Petitioner's mesothelioma.

36.

In particular, **Asbestos Supplier Defendant, McCarty Corporation**, and others, re-labeled the asbestos and asbestos-containing products that it supplied, affixing to them **McCarty Corporation's** own brand name, and shipped the same to Avondale during the time period that and Petitioner's father and former husband were employed at Avondale.

9

37.

In addition, **Hopeman Brothers** and its employees also installed asbestos-containing materials on vessels being constructed and/or repaired at Avondale over the course of Petitioner's father's and brother's employment there, thereby causing Petitioner to suffer household exposure to asbestos through Hopeman's own installation of asbestos.

Hopeman is also liable for:

a)  Creating a work environment laden with asbestos dust and an unhealthy and unsafe place for its employees, including Petitioner, to work;

b)  Failing to provide warnings, or adequate warnings, to its employee of the dangers and risks posed by the asbestos in the atmosphere in which he worked; of the need for correct, adequate, and/or appropriate safety equipment; of critical medical and safety information regarding asbestos hazards in general and of hazard at the jobsites in particular; and of the hazards created by its activities;

c)  By failing to test, or adequately test, the work environment for the presence of toxic, hazardous and carcinogenic chemicals, particularly asbestos;

d)  By failing to apprise its employees and third persons of the dangers posed by exposures to their work activities and the dangers of contaminating persons in the household with asbestos dust and fibers;

e)  By failing to ventilate and/or properly ventilate the areas in which they performed activities, or otherwise provide a safe and suitable means of eliminating the amount of asbestos dust in the air;

f)  By failing to clean up and/or properly clean up the asbestos dust created by their work;

g)  By failing to formulate policies and adopt plans, procedures, and supervision necessary for the adequate protection of persons who came into contact with asbestos dust as a result of their activities;

h)  By failing to comply with applicable State and Federal regulations regulating workplace exposure to asbestos (including, but not limited to, those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh-Healey Public Contracts Act and the Occupational Safety and Health Act);

i)  By not providing safety instructions or sufficient safety instructions for eliminating or reducing the health risks associated with their activities;

j)  By failing to test or adequately test the materials with which they were working to determine the presence of asbestos;

k)  By failing to purchase products and materials that did not contain asbestos;

l)  By purchasing, using, applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that contained asbestos; and

m)  By failing to properly label products that they purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and tore out as containing asbestos.

38.

The negligent acts outlined above were a substantial contributing factor in Petitioner's exposure to dangerous and hazardous levels of asbestos, and resultant injuries and damages.

39.

Hopeman, individually and successor-in-interest to Wayne Manufacturing, is also liable to Petitioner for its manufacture of asbestos wall-board which installed on board vessels under construction and/or repair at Avondale, causing Petitioner's household exposure to asbestos.

40.

**Wayne Manufacturing Company** manufactured the asbestos-containing wall board used by Hopeman Brothers. Wayne Manufacturing Company is strictly liable and liable for negligence for the reasons set forth herein referring to all manufacturers of asbestos products.

41.

At all times material times herein **Liberty Mutual Insurance Company** was the liability insurer of Wayne Manufacturing Company.  Liberty Mutual is therefore liable for any and all liability of Wayne Manufacturing Company and is amenable to suit by direct action.

## LIABILITY OF AVONDALE'S EXECUTIVE OFFICER DEFENDANTS

42.

Avondale's Executive Officers, who were delegated or otherwise in charge of safety at all relevant times are liable to Petitioner for the following acts and omissions:

a) Failing to provide necessary changing areas, showers and special clothing to its employees so that its employees cleaned off and removed all asbestos dust and fibers from their person and clothing prior to returning home;

b) Failing to survey, study, inspect, test, abate and remediate asbestos in the facility in which its employees worked;

c) Failing to exercise reasonable care to ensure employees and their persons and clothing would not become contaminated with asbestos dust;

d) Failing to maintain a proper worksite;

e) Failing to provide clean air and proper ventilation;

f) Failing to control the emission of hazardous levels of toxic materials including asbestos-containing dust into the ambient atmosphere and contaminating the areas wherein its employees, including Petitioner's father and brother, worked;

11

g)     Failing to exercise ordinary care to warn employees, of the danger and harm to which exposure to asbestos could cause to their persons and their households;

h)     Failing to ensure that asbestos material to which its employees were exposed did not expose and injure innocent offsite bystanders.

i)     Failing to reveal and knowingly concealing the inherent dangers in using asbestos, and other harmful substances in Avondale's production processes;

j.     Through other acts of negligence which may be revealed during discovery.

43.

The exposure of Petitioner to asbestos dust as a result of the acts or omissions of the Avondale executive officers was a substantial contributing cause in his development of mesothelioma.

44.

As to **Avondale**, its executive officers and insurers, Petitioner does not allege and is not making a claim for strict liability and in fact specifically disclaims any causes of action he may have against these defendants under theories of strict liability. Petitioner likewise disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Petitioner also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.

45.

Petitioner's injuries are cumulative, indivisible injury for each and every exposure to asbestos-containing material for which each Defendant is jointly, severally and in solido liable.

**DAMAGES**

46.

**WHEREFORE**, on the basis of all of the foregoing, Petitioner requests that each and all Defendants be served with this Petition and that there be judgment against these Defendants jointly, severally and *in solido* in a sum sufficient to compensate Petitioner for the following:

a.     all past, present and future medical costs and expenses related thereto;

b.     all past, present and future mental suffering, anguish and pain

c.     all past, present and future physical pain and suffering

12

d.   all past, present and future physical impairment and disability

e.   all past, present and future disfigurement

f.   loss of quality of life

g.   All other forms of relief provided by law or equity together with interest from the date of judicial demand until paid, and all costs of these proceedings.

As a proximate result of Defendants' actions, inactions, liability and fault, Petitioner incurred and continues to incur medical expenses due to the need to hire, consult and retain physicians to attempt to treat his mesothelioma and other asbestos-related conditions, the amount of which cannot be set forth at this time with accuracy, and he will require further medical treatment in the future thereby incurring expenses which cannot be set forth at this time.

Respectfully submitted,

**MARTZELL, BICKFORD & CENTOLA**

_____
**SCOTT R. BICKFORD, T.A (#1165)**
**SPENCER R. DOODY (#27795)**
338 Lafayette Street
New Orleans, Louisiana 70130
(504) 581-9065
(504) 581-7635 (Fax)

**PLEASE SERVE:**

**TAYLOR-SEDIENBACH, INC.**
Through its Agent for Service of Process:
Robert I. Shepard
731 S. Scott Street
New Orleans, LA 70119

**EAGLE, INC.**
Through its Agent of Service of Process:
Susan Kohn
1100 Poydras Street
30th Floor
New Orleans, LA 70163

**MCCARTY CORPORATION**
Through its Agent of Service of Process:
Paul H. Spaht
4232 Bluebonnet Boulevard
Baton Rouge, LA 70802

**HUNTINGTON INGALLS, INC.**
Through its Registered Agent
C.T. Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

13

**CERTAIN UNDERWRITERS AT LLOYD'S LONDON**
Through its Agent for Service of Process
The Louisiana Secretary of State
**State of Louisiana**
Tom Schedler
8585 Archives Avenue
Baton Rouge, LA 70804

**HOPEMAN BROTHERS, INC.**
Through its Agent of Service of Process:
C. T. Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

**LIBERTY MUTUAL INSURANCE CO.**
Through its Agent of Service of Process:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**INTERNATIONAL PAPER CO.**
Through its agent for service of process:
C. T. Corporation System
3867 Plaza Tower Drive
Baton Rouge, LA 70816

**BERKSHIRE HATHAWAY SPECIALTY INSURANCE COMPANY**
**formerly STONEWALL INSURANCE COMPANY**
Through its Registered Agent:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**LAMORAK INSURANCE COMPANY**
Through its Agent for Service of Process
The Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809

**CBS CORPORATION, successor-in-interest to**
**Viacom Inc., successor by merger to**
**CBS Corporation, f/k/a/ Westinghouse Electric Corporation**
Through its Agent for Service of Process:
Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

**ALBERT BOSSIER**
As an Executive Officer of Avondale Industries, Inc.
Brian Bossier, Esq.
**Blue Williams, LLP**
3421 N. Causeway Blvd., 9th Floor
Metairie, LA 70002

**THE TRAVELERS INSURANCE COMPANY**
Via service of process by the Direct Action Statute L.R. S. 22:655, which may be served through
The Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809

14